## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENT MCKENNEY,                    : Civil No. 1:24-CV-1568
                                   :
    Plaintiff,                 :
                                   :
                                   :
      v.                     :
                                   :
                                   : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                   :
Commissioner of Social Security,[1] :
                                   :
    Defendant.                 :

## MEMORANDUM OPINION

### I.  Introduction

Brent McKenney filed an application under Title II of the Social Security Act for disability and disability insurance benefits on November 16, 2021. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that McKenney was not disabled from his alleged onset date of April 29, 2021, through November 9, 2023, the date of the ALJ's decision.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

McKenney now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.  Statement of Facts and of the Case

Brent McKenney filed for disability and disability insurance benefits, alleging disability due to severe gout, a torn meniscus and related surgeries, high blood pressure, sleep apnea, memory issues, arthritis in his hands, hearing loss, obesity, gastrointestinal issues, and unspecified arthritis.[3] McKenney was 36 years old at the time of his alleged onset of disability, had at least a high school education, and had past relevant work as a food delivery driver, a laborer, an electrical apprentice, and a yard worker.[4]

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[3] Tr. 64.

[4] Tr. 35.

The medical record regarding McKenney's impairments revealed that prior to the alleged onset of disability, McKenney treated for gout and complained of pain in his hands.[5]  His primary care physician, Dr. Nathan Hemerly, D.O., noted in October of 2020 that McKenney was following Weight Watchers and had lost 50 pounds.[6]  Despite this weight loss, McKenney continued to have gout flares, and Dr. Hemerly noted that McKenney was not taking his medication regularly.[7]  In December of 2020, McKenney complained of stiffness and pain in his right hand.[8] He also reported short term memory issues at this visit.[9]  An examination revealed tenderness along several joints, and Dr. Hemerly ordered an x-ray of his right hand, which revealed mild degenerative changes in the second and third metacarpal phalangeal joint.[10]  He also ordered a neurology consultation for McKenney's memory issues.[11]

---

[5] Tr. 390, 490.
[6] Tr. 390.
[7] *Id.*
[8] Tr. 490.
[9] *Id.*
[10] Tr. 406, 491.
[11] Tr. 491.

In January of 2021, McKenney reported swelling and pain in his right knee, which Dr. Hemerly noted that it may be gout related.[12] McKenney continued to complain of joint pain and gout flareups, and in March of 2021, underwent a meniscus repair surgery on his right knee.[13] At a post-surgery follow up appointment in April of 2021, McKenney reported that he was feeling better, had no pain, and mowed the lawn the day prior.[14]

Around this time, McKenney also reported cognitive issues to his providers, as well as left shoulder pain.[15] McKenney received a brain MRI in April, which showed no intracranial abnormality and no etiology for cognitive decline.[16] In May, McKenney reported that his knee was doing well after surgery and exhibited a nonantalgic gait on examination, but he reported pain in his right shoulder.[17] He began physical therapy for his shoulder, at which time he reported that his activities, such as

---

[12] Tr. 453.
[13] Tr. 447, 627-28, 663, 1122, 1260.
[14] Tr. 1235.
[15] Tr. 499, 633.
[16] Tr. 633, 672.
[17] Tr. 756.

kayaking, weight lifting, basketball, and football were limited, and that he could bench press no greater than 100 pounds due to his shoulder pain.[18]

At his annual examination with Dr. Hemerly in July of 2021, McKenney reported swelling, cracking, and popping in his hands.[19]  On examination, Dr. Hemerly noted the popping and cracking of the hands but also noted that McKenney exhibited 5/5 strength in his extremities.[20] He was advised to follow up with rheumatology.[21]  A mental status examination at this visit was unremarkable.[22]  Around this time, McKenney was also admitted to the hospital and was diagnosed with diverticulitis.[23]  At a follow up after his discharge, he reported he was doing well and his examinations were normal.[24]

---

[18] Tr. 1021, 1024.
[19] Tr. 460.
[20] Tr. 461.
[21] *Id.*
[22] *Id.*
[23] Tr. 429, 434-36.
[24] Tr. 516.

McKenney continued to complain of pain and swelling in his hands in October of 2021.[25]  He reported dropping household items and intermittent swelling of his knuckles.[26]  The provider noted his July 2021 diagnosis of inflammatory arthritis, and that his pain was thought to be gout related.[27]  On examination, McKenney exhibited mild swelling but 5/5 grip strength bilaterally and no direct bony tenderness over his joints.[28]  He was referred to an orthopedic clinic.[29]  At his orthopedic consult in November, Dr. Kenneth Taylor, M.D., noted that McKenney had normal range of motion, no soft tissue swelling, and good extensor and flexor tendon function.[30]  He opined that McKenney's stiffness was consistent with inflammatory arthropathy and suggested he continue with rheumatology, as there was no surgical indication.[31]  Around this

---

[25] Tr. 526.

[26] *Id.*

[27] *Id.*

[28] Tr. 527.

[29] *Id.*

[30] Tr. 759.

[31] *Id.*

time, McKenney also treated for left ankle pain, which was noted to be related to his inflammatory arthritis.[32]

McKenney treated with Dr. Santosh Bhusal, M.D., in December of 2021, at which time he continued to complain of joint pain.[33]  His physical examination revealed moderate tenderness and mild swelling.[34]   Dr. Bhusal noted that McKenney was compliant with his gout medications and suspected the pain may be related to inflammatory arthritis.[35] However, an x-ray of McKenney's hands around this time revealed no evidence of inflammatory arthritis but moderate degenerative change of the left third DIP joint.[36]

In February of 2022, McKenney reported continued pain and stiffness to Dr. Bhusal, and that his medication was not helping.[37]  An examination at this visit revealed intact sensory and motor function, no obvious focal neurological deficits, 5/5 muscle strength, and fullness and

---

[32] Tr. 578.
[33] Tr. 559.
[34] *Id.*
[35] *Id.*
[36] Tr. 576.
[37] Tr. 777.

tenderness over several MCPs and PIPs.[38]  Dr. Bhusal started him on new medications.[39]  McKenney reported some improvement in his hand pain in May.[40]

In April of 2022, McKenney underwent a consultative examination with Dr. James Goodyear, M.D.[41]  McKenney reported his history of gout, joint pain, and short-term memory loss.[42]  It was noted that McKenney had a cane and walker at home but did not bring an assistive device to the examination.[43]  McKenney reported that he lived with his wife and children, and that he needed assistance at home.[44]  He noted that he could perform some personal care but could not zip, button, or tie because of his hand pain.[45]  On examination, McKenney's gait was wide-based and slow, he could not walk on his heels and toes without difficulty, and he could squat only 20 percent.[46]  Dr. Goodyear noted global tenderness

---

[38] Tr. 778.
[39] Tr. 777.
[40] Tr. 1639.
[41] Tr. 1612-18.
[42] Tr. 1613-14.
[43] Tr. 1614.
[44] *Id.*
[45] Tr. 1615.
[46] Tr. 1616.

in McKenney's hands with no specific joint deformity, enlarged bony prominences of the knees consistent with degenerative joint disease, and global tenderness in his elbows.[47]   Dr. Goodyear further noted that McKenney's hand and finger dexterity were abnormal, and that he was unable to zip, button, and tie or manipulate small objects with either hand.[48]

Dr. Goodyear filled out a medical source statement following this examination, in which he opined that McKenney could lift and carry up to 20 pounds occasionally; could stand two hours and walk one hour in an eight-hour workday, could frequently reach with his upper extremities but never handle, finger, push, pull, or feel; and could occasionally climb stairs and ramps and stoop but never kneel, crouch, or crawl.[49]

In August of 2022, McKenney reported back pain and intermittent headaches.[50]   At his annual examination in October, McKenney reported increased hand pain after discontinuing his medication for his hand pain

---

[47] Tr. 1617.
[48] *Id.*
[49] Tr. 1619-1624.
[50] Tr. 1766.

because he thought it was causing excessive fatigue.[51]  It was noted at this time that McKenney had gained weight after previously losing weight with Weight Watchers.[52]  Further, McKenney began taking Wellbutrin for depression symptoms, and he reported that the medication was helpful.[53]  His examination was normal, and it was noted that he should continue seeing rheumatology for his joint pain.[54]  In December, McKenney again reported back pain, and a physical examination revealed some pain to palpation but good range of motion, a negative straight leg raise test, and intact sensation, and he had no difficulty ambulating.[55]  Dr. Hemerly described this examination as reassuring and advised McKenney to take an anti-inflammatory and muscle relaxer for the pain.[56]

McKenney continued to follow up for his gout, joint pain, and back pain into 2023.[57]  In April of 2023, he was also evaluated for sleep

---

[51] Tr. 1736.
[52] *Id.*
[53] *Id.*
[54] Tr. 1737.
[55] Tr. 1746-47.
[56] *Id.*
[57] Tr. 1721, 1783, 1797-98.

apnea.[58]  McKenney followed up with Dr. Hemerly for completion of his disability paperwork in August.[59]  McKenney reported that his depression and ADHD made it difficult to follow directions and to get out of bed some days.[60]  He further reported that the Wellbutrin was helpful, and that he experienced more symptoms when he does not take it.[61]  Dr. Hemerly noted that as to McKenney's alleged memory issues, McKenney never followed up with a prior consultation for treatment and he suggested he do so.[62]

At this visit, Dr. Hemery completed a medical source statement regarding McKenney's mental health impairments.[63]  Dr. Hemerly opined that McKenney had several marked limitations due to his depression, including in his ability to remember work-like procedures, understand simple instructions, perform at a consistent pace, and deal with normal work stress.[64]  He further noted that McKenney was

---

[58] Tr. 1790.
[59] Tr. 1857.
[60] *Id.*
[61] *Id.*
[62] Tr. 1858.
[63] Tr. 1820-28.
[64] Tr. 1826.

extremely limited in his abilities to adapt or manage himself and to concentrate, persist, and maintain pace.[65]   Dr. Hemerly opined that McKenney would miss more than four days per month, and that he would be on task less than 80 percent of the time.[66]

In September, at a visit with Neurology, McKenney reported that his memory issues were getting worse.[67]  He reported to Dr. William Jens, D.O., that he repeats himself, forgets what he needs when he goes to the grocery store, and forgets to turn the stove off after cooking sometimes.[68] Dr. Jens noted that McKenney's memory problems were likely due to his untreated sleep apnea, depression, and chronic pain.[69]   He referred McKenney to a neurocognitive clinic.[70]

It is against the backdrop of this record that an ALJ held a hearing on McKenney's disability application on October 6, 2023.[71]  McKenney

---

[65] Tr. 1827.

[66] *Id.*

[67] Tr. 1865.

[68] *Id.*

[69] Tr. 1866.

[70] *Id.*

[71] Tr. 44-62.

and a Vocational Expert both appeared and testified at this hearing.[72] Following this hearing, on November 9, 2023, the ALJ issued a decision denying McKenney's application for disability benefits.[73] The ALJ first concluded that McKenney had not engaged in substantial gainful activity since his alleged onset date of April 29, 2021.[74] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that McKenney suffered from the following severe impairments: gout; osteoarthritis of the right hand and knee; right knee meniscus tear, status post surgery; inflammatory arthritis; and obesity.[75] The ALJ found that McKenney's mental health impairments, including depression, were nonsevere.[76] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[77] Specifically, the ALJ noted that while there was no listing for obesity, there was no indication from the record that McKenney's

---

[72] *Id.*

[73] Tr. 18-43.

[74] Tr. 23.

[75] *Id.*

[76] Tr. 24.

[77] Tr. 28.

obesity increased the severity of his impairments such that it met or medically equaled a listing.[78]

Between Steps 3 and 4, the ALJ then concluded that McKenney:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent stand; frequently walk; never climb ladders, ropes, or scaffolds or work at unprotected heights; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; occasional foot controls bilaterally; can occasionally handle or finger bilateral; tolerate occasional exposure to temperature extremes, humidity, wetness, vibration, or concentrated dust fumes or gases; can maintain concentration, persistence or pace for two hour segments sufficient to perform routine 2-3 step tasks or instructions.[79]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and McKenney's reported symptoms. With respect to the medical opinion evidence concerning McKenney's physical impairments, the ALJ considered the opinions of the state agency consultants, Dr. Deleo and Dr. Keiter. The ALJ found Dr. Deleo's opinion, which concluded that McKenney could perform light work with no additional limitations, not

---

[78] Tr. 29.

[79] *Id.*

14

fully persuasive.[80]  The ALJ reasoned that while Dr. Deleo's opinion was supported by her review of the record, additional evidence indicated that McKenney had additional exertional and nonexertional limitations.[81]  As for Dr. Keiter's opinion, which found that McKenney could perform light work with additional postural limitations, the ALJ found this opinion persuasive.[82]  The ALJ reasoned that this opinion was consistent with the records Dr. Keiter reviewed, as well as with additional evidence received at the hearing showing that McKenney's impairments were stable with treatment.[83]

The ALJ also considered Dr. Goodyear's consultative opinion and found it not fully persuasive.[84]  Specifically, the ALJ found that the standing and walking limitations were not consistent with Dr. Goodyear's own examination or McKenney's treatment records from other providers.[85]  The ALJ further found that the manipulative

---

[80] Tr. 33.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] Tr. 33-34.

[85] Tr. 34.

limitations set forth by Dr. Goodyear were not supported by his examination or by McKenney's treating provider records and activities of daily living.[86]

With respect to McKenney's mental health impairments, the ALJ considered the state agency consulting opinions from Dr. Plowman and Dr. Garito.[87] The ALJ found Dr. Plowman's opinion, which found that McKenney had no medically determinable impairments, not persuasive, as the record sufficiently established medically determinable impairments.[88] The ALJ also considered Dr. Garito's opinion, which found that McKenney's mental health impairments were nonsevere and he had only mild limitations, and found this opinion persuasive.[89] The ALJ reasoned that this opinion was consistent with the evidence of record, in which McKenney reported depression and memory issues, that showed McKenney's impairments were stable with treatment.[90]

---

[86] *Id.*

[87] Tr. 25-26.

[88] Tr. 25.

[89] Tr. 25-26.

[90] Tr. 26.

16

The ALJ also considered Dr. Hemerly's opinion containing marked to extreme limitations and found it not persuasive.[91] The ALJ reasoned that Dr. Hemerly's opinion was based on McKenney's subjective reports, and that the limitations therein were not consistent with Dr. Hemerly's treatment records.[92]  The ALJ further found that these marked to extreme limitations were not consistent with the fact that McKenney did not participate in any mental health treatment during the relevant period or with McKenney's reported activities of daily living.[93]

With respect to McKenney's symptoms, the ALJ found that McKenney's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence.[94]  McKenney testified that his inflammatory arthritis affected his hands, and that his pain medication helped his symptoms.[95] He reported using a walker when he has a gout flareup, and that he had

---

[91] Tr. 26-27.
[92] Tr. 26.
[93] Tr. 26-27.
[94] Tr. 30.
[95] Tr. 49.

walking and standing limitations due to his joint pain.[96]  He stated that he cannot perform certain personal care and needs help from his adult children and wife.[97]  McKenney further testified that he takes two naps per day, and that he is on medication for depression but is not treating with therapy.[98]

The ALJ ultimately found McKenney's testimony to be inconsistent with the objective clinical findings.[99]  The ALJ recounted the medical evidence, noting McKenney's reports of pain and the largely unremarkable physical examinations of his treating providers and imaging during the relevant period.[100]  The ALJ also noted McKenney's weight and body mass index throughout the alleged disability period.[101] The ALJ also recounted the scant evidence of McKenney's mental health impairments, noting that he reported memory loss and depressive symptoms during the relevant period but did not seek any mental health

---

[96] Tr. 50, 53-54.
[97] Tr. 52, 55-56.
[98] Tr. 55.
[99] Tr. 30.
[100] Tr. 30-32.
[101] *Id.*

treatment, and that his Wellbutrin helped his symptoms.[102]  Ultimately, the ALJ concluded that McKenney was not as limited as he alleged.

Having made these findings, the ALJ found at Step 4 that McKenney was unable to perform his past work but found at Step 5 that he could perform the occupations of a school bus monitor, a page, TV/radio, and a furniture rental clerk.[103]  Accordingly, the ALJ found that McKenney had not met the stringent standard prescribed for disability benefits and denied his claim.[104]

This appeal followed.  On appeal, McKenney argues that the ALJ's RFC limitations, as well as his consideration of the medical opinions and McKenney's subjective symptoms, is not supported by substantial evidence.  This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

---

[102] Tr. 24-26.
[103] Tr. 35-36.
[104] *Id.*

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[105] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[106]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[107]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[108]    However, where there has been an adequately developed

---

[105] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[106] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[107] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[108] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[109]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[110]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[111]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[112]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is

---

[109] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).
[110] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[111] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[112] *Id.*

supported by substantial evidence and was based upon a correct application of the law.[113]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[114] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[115] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more

---

[113] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[114] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[115] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

than just conclusory statements.[116]  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[117]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[118]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[119]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement

---

[116] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[117] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[118] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[119] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[120]

In making this determination, the ALJ follows a five-step evaluation.[121]   The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[122]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[123]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her

---

[120] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[121] 20 C.F.R. §§404.1520(a), 416.920(a).
[122]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[123] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

analysis.[124]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[125]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[126]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[127]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician

---

[124] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[125] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[126] *Mason*, 994 F.2d at 1064.
[127] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

have made the particular findings that an ALJ adopts in the course of determining an RFC."[128]    Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[129]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.    Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[130] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.    On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have

---

[128] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[129] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[130] *Biller*, 962 F. Supp. 2d at 778–79.

routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[131]     Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[132]

## C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[133]   Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[134]   Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the

---

[131] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[132] *Burns,* 312 F.3d 113.
[133] 20 C.F.R. § 404.1520c(c).
[134] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

more persuasive the medical opinions . . . will be."[135]    The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[136]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[137]    When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[138]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[139]    On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[135] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[136] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[137] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[138] *Mason*, 994 F.2d at 1066.

[139] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[140]

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[141]  Our review of those determinations is deferential.[142]  However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[143]  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[144]  As the Third Circuit has noted, while "statements of the individual concerning

---

[140] *Cummings*, 129 F. Supp. 3d at 214–15.
[141] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
[142] *Id.*
[143] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[144] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

29

his or her symptoms must be carefully considered, the ALJ is not required to credit them."[145]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[146]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[147]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[148]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity,

---

[145] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[146] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[147] SSR 16-3p.
[148] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.

persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[149]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[150]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[151]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[152] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than

---

[149] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[150] *Id.*
[151] SSR 16-3p.
[152] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

medications; and other factors regarding the claimant's functional limitations.[153]

## E. **The ALJ's Decision is Supported by Substantial Evidence.**

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[154] Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

McKenney first argues that the ALJ failed to appropriately consider Dr. Goodyear's consultative opinion. He asserts that Dr. Goodyear's standing and walking limitations, as well as his manipulative limitations, should have been found persuasive, and as such, would result in a finding that McKenney was disabled.[155] However, the ALJ adequately explained why he found these limitations not fully

---

[153] *Id.*

[154] *Biestek*, 139 S. Ct. at 1154.

[155] Doc. 14 at 6-11.

persuasive.  The ALJ recounted Dr. Goodyear's findings, noting that his standing and walking limitations were not consistent with his own examination or with the overall medical record.    Indeed, while McKenney's physical examination at the consultative examination was somewhat limited, the longitudinal medical record revealed joint tenderness but otherwise largely unremarkable physical examination findings during the relevant period.    Regarding Dr. Goodyear's manipulative limitations, the ALJ noted that Dr. Goodyear's limitations were not consistent with the overall record or with McKenney's activities of daily living.

Instead, the ALJ found Dr. Keiter's opinion persuasive.  The ALJ noted that Dr. Keiter's opinion that McKenney could perform a range of light work was consistent with the evidence showing improvement in McKenney's symptoms with medication, the unremarkable imaging during the relevant period, and the medical evidence that McKenney's symptoms were stable with treatment.  Thus, while McKenney would have us reweigh the medical opinion evidence to reach a different

conclusion than the ALJ, we are simply not permitted to do so.[156] Accordingly, we conclude that the ALJ's treatment of Dr. Goodyear's opinion is supported by substantial evidence and does not require a remand.

McKenney also asserts that the ALJ failed to consider his depression a severe impairment at Step 2. At the second step, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[157] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities,"[158] or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[159] This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[160] The

---

[156] *Chandler*, 667 F.3d at 359

[157] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

[158] 20 C.F.R. 404.1520(c).

[159] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[160] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

claimant bears the burden to show that an impairment should be considered severe.[161]

Here, the ALJ adequately explained why he found McKenney's depression to be a nonsevere impairment. The ALJ detailed the medical record, including the medical opinion evidence, regarding McKenney's mental health impairments. The ALJ noted McKenney's reports of memory loss and depression symptoms, but further noted that other than treating with Wellbutrin, which he reported helped his symptoms, the record does not contain any evidence that McKenney sought treatment for his mental health symptoms.[162] Additionally, the ALJ thoroughly discussed Dr. Hemerly's medical source statement regarding McKenney's mental health impairments, which he found was unpersuasive and not supported by Dr. Hemerly's own treatment notes or the longitudinal record.[163] Ultimately, the ALJ found that his depression was nonsevere but limited McKenney to a range of light work with additional non-

---

[161] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).
[162] Tr. 24-26.
[163] *Id.*

exertional limitations.  Given that it is the claimant's burden to prove that an impairment is severe at Step 2, we conclude that the ALJ's Step 2 decision is supported by substantial evidence and does not require a remand.

McKenney also contends that the ALJ failed to adequately consider his obesity.  Under the agency's regulations, the ALJ must analyze the effects of a claimant's obesity on his or her ability to function.[164]  This is particularly so when the ALJ identifies the claimant's obesity as a severe impairment at Step 2.[165]  The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity.[166]  Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace

---

[164] *See* SSR 02-01p, SSR 00-3p.

[165] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[166] *Diaz*, 577 F.3d at 504 (citations omitted).

function at step three and at every subsequent step[,]" a remand is not required.[167]

Here, the ALJ found McKenney's obesity to be a severe impairment and discussed this impairment at Step 3, finding that there was no indication from the medical records that McKenney's obesity exacerbated his impairments such that it met or medically equaled a listing.[168] Further, the ALJ recounted the medical records that documented McKenney's obesity in his discussion of the medical evidence, noting that during the relevant period McKenney's body mass index was 39 or higher and he weighed between 285 and 302 pounds.[169]  This evidence was discussed in conjunction with the claimant's physical examination findings, both normal and abnormal, during the relevant period.[170] Ultimately, the ALJ limited McKenney to a range of light work and additional postural limitations.[171]  Thus, given that the ALJ need not use

---

[167] *Id.* at 504; *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).
[168] Tr. 29.
[169] Tr. 31-33.
[170] *Id.*
[171] Tr. 29.

particular language or format, and instead must meaningfully consider a claimant's obesity at all steps in the sequential analysis, we find that the ALJ adequately considered McKenney's obesity when crafting the RFC determination. As such, a remand is not required.

McKenney also contends that the ALJ erred in assessing his subjective testimony, in that the ALJ failed to consider evidence of McKenney's need to lie down during the day. However, the ALJ considered McKenney's testimony, including that he naps several times per day, but found that McKenney was not as limited as he alleged. In doing so, the ALJ recounted the medical evidence, none of which indicated that McKenney needed to lie down during the day. The ALJ considered all of the medical evidence, which included both abnormal and unremarkable examination findings, as well as McKenney's activities of daily living and concluded that McKenney was not as limited as he alleged. Thus, while McKenney challenges the ALJ's credibility determination, we are not permitted at this stage to reweigh the evidence, and instead must simply determine whether the ALJ's decision

was supported by "substantial evidence."[172]  Here, we conclude that the ALJ's consideration of McKenney's subjective symptoms is supported by substantial evidence.

Given that the ALJ considered all the evidence and adequately explained his decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

---

[172] *Chandler*, 667 F.3d at 359; *Biestek*, 139 S. Ct. at 1154.

IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 18th day of September 2025.


<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge